UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LORAINE ANN BUREK,

                                    Plaintiff,

    -v-

ANDREW SAUL,
Commissioner of Social Security,

                                    Defendant.
_____

19-CV-301-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 8).

Plaintiff Loraine Ann Burek brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding her ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 5) is granted, the Commissioner's motion (Dkt. No. 6) is denied, and the case is remanded.

## BACKGROUND[1]

Plaintiff protectively filed an application for DIB on September 6, 2015, alleging a disability as of September 2, 2015, due to a herniated disc at C5-6, cervicalgia, headaches, osteoarthritis, panic disorder and anxiety, agoraphobia, and depression. (Tr.

---

[1] The Court assumes the parties' familiarity with the record in this case.

17, 165-166, 199).[2] Her claim was initially denied on January 27, 2016. (Tr. 94-95, 104-105). On February 19, 2016, Plaintiff filed a timely written request for a hearing. (Tr. 104-105).

On March 12, 2018, a video hearing was conducted by Administrative Law Judge ("ALJ") Elizabeth Ebner. (Tr. 40-62). The ALJ appeared in Falls Church, Virginia, while Plaintiff and her attorney appeared from Buffalo, New York. A vocational expert ("VE") also appeared.

On April 23, 2018, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 14-39). That decision became final when on January 8, 2019, the Appeals Council denied her request for review. (Tr. 1-8). This action followed.

## DISCUSSION

### I.  Scope of Judicial Review

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*,

---

[2] References to "Tr." are to the administrative record in this case.

312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets

the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot

adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III.   *The ALJ's Decision*

Under step one, the ALJ found that Plaintiff has not engaged in substantial activity since the alleged onset date, September 2, 2015. (Tr. 19). At step two, the ALJ concluded that Plaintiff has the following severe impairments: Cervical disc bulging and degenerative disc disease with reports of cervicogenic headaches; history of knee replacement surgeries; and obesity. (Tr. 20-24). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 24). Before proceeding to step four, the ALJ assessed Plaintiff's RFC, in pertinent part, as follows:

> [T]he claimant has the residual functional capacity to perform light work . . . She can frequently reach, handle, finger, and operate hand and foot controls, can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, can never climb ladders, ropes or scaffolds or be exposed to unprotected heights or dangerous moving mechanical parts, and can tolerate occasional exposure to vibrations.

(Tr. 24). Proceeding to step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 32). At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in

the national economy that she can perform, namely Ambulatory Care Office Nurse. (Tr. 33). Accordingly, the ALJ concluded that Plaintiff is not disabled under the Act. (Tr. 34).

### IV.  *Plaintiff's Challenges*

Plaintiff argues, *inter alia*, that the ALJ's RFC finding is not supported by substantial evidence because she failed to address Plaintiff's difficulties in turning her head and neck in the RFC. The Court agrees.

At step two, the ALJ found that Plaintiff has the severe impairment of cervical disc bulging and degenerative disc disease, but her RFC finding does not include any limitation(s) regarding Plaintiff's lack of full range of motion ("ROM") in her neck. Plaintiff testified that she has problems moving her head from side to side, bending her neck downward, and looking down. (Tr. 51-52). Her testimony is consistent with the numerous physical examination findings by her treating physicians, the consultative examiner, and her physical therapist showing limited ROM in her cervical spine. (Tr. 280, 283, 300, 355, 348, 544-546, 600, 627, 640). In fact, on June 24, 2015, her treating physician Dr. Joseph M. Kowalski, M.D., found that she could rotate her neck only 35 degrees (out of 60 degrees) and that her neck was 50% impaired. (Tr.600). Although the ALJ acknowledged generally that the Plaintiff has alleged significant limitations related to her neck, and recounted sporadically Plaintiff's treatment for her neck, including her prior neck injury and the reoccurrence of neck pain (Tr. 25-29), the ALJ does not discuss in her decision Plaintiff's inability to turn her head or neck, and failed to incorporate any limitations related to Plaintiff's lack of ROM in her neck into the RFC determination. This was error. See *Hopkins v. Comm'r of Soc. Sec.*, No. 6:13-CV-1082 (GTS), 2015 WL 4508630, at *6 (N.D.N.Y. July 23, 2015) ("The lack of discussion regarding Plaintiff's limitations in

movement of her neck and head, calls into question whether the decision was actually based on substantial evidence.") (quotations and citations omitted); see also *Fry v. Berryhill*, 16-CV-337-LJV-MJR, 2017 WL 6334203, at *7 (W.D.N.Y. Nov. 1, 2017).

In a recent decision from the District of Vermont, the claimant argued that the ALJ "failed to adequately accommodate all the limitations relating to his cervical spine impairment when determining his RFC," because the ALJ failed to "consider his allegations relating to his limited ability to move his head and neck." *Frank G. v. Comm'r of Soc.Sec,*, No. 5:17-CV-103, 2019 WL 430887, at *3 (Feb. 4, 2019). The Court noted that the "RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* at *4 (quoting SSR 96-8p) (internal quotations omitted). The Court noted that the head and neck movement was relevant to the claimant's case and further stated that "non-exertional limitations restricting head and neck movement may significantly diminish an individual's work capacity." *Id.* (citations omitted).

Importantly, in that case, the VE's testimony showed that limited head and neck movement could significantly erode the occupational base. The VE had listed three jobs that could be performed by the claimant based on the ALJ's hypothetical. However, when limited head and neck movement was added to the hypothetical, all three jobs were no longer available; "[p]ut another way, non-exertional limitations regarding Plaintiff's ability to move his head and neck could completely erode the occupational base of work that the VE testified he could perform." *Id.*

In sum, the lack of discussion by the ALJ regarding Plaintiff's limitations in the movement of her neck and head, calls into question whether her decision was actually supported by substantial evidence. This failure is "particularly erroneous here because the ALJ found at step two that Plaintiff had the severe impairment involving her cervical spine." *Hopkins*, 2015 WL 4508630, at *6. The case is therefore remanded.[3]

## CONCLUSION

For the reasons stated, Plaintiff's motion for judgment on the pleadings (Dkt. No. 5) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 6) is denied, and this case is remanded for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   June 19, 2020
         Buffalo, New York

*[signature]*
MICHAEL J. ROEMER
United States Magistrate Judge

---

[3] Plaintiff also argues that remand is required because the ALJ mischaracterized the mental health evidence and failed to address her mental limitations in the RFC. Because the case is being remanded anyway, the Commissioner should also consider this argument on remand.